# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WATERLOO DIVISION

CONNIE WILSON

    Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

No. C05-2064

**ORDER**

_____

This matter comes before the court pursuant to briefs on the merits of this application for disability insurance benefits. On October 28, 2006, the parties consented this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (docket number 6). The final decision of the Commissioner of Social Security is reversed and this matter is remanded for payment of benefits.

## I. PROCEDURAL BACKGROUND

Plaintiff Connie Wilson applied for Supplemental Security Income benefits on January 4, 2001, alleging an inability to work since December 15, 1997 (Tr. 94-96). Ms. Wilson's application was originally denied on March 26, 2001 (Tr. 54-57), and denied again on reconsideration on November 20, 2001 (Tr. 59-62). On January 22, 2002, Ms. Wilson filed a Request for Hearing by an Administrative Law Judge ("ALJ") (Tr. 63). A hearing was scheduled in Dayton, Ohio for March 31, 2003, which Ms. Wilson failed to attend. On April 2, 2003, the ALJ dismissed Ms. Wilson's case for failure to appear at the scheduled hearing (Tr. 50-53). Ms. Wilson appealed the dismissal to the Appeals Council on May 16, 2003 (Tr. 85) and filed a new application (Tr. 122-24).

1

On July 1, 2003, the Appeals Council remanded the case to determine whether good cause existed for Ms. Wilson's failure to attend the hearing, and determination of eligibility if good cause was found (Tr. 87-89). A hearing before ALJ Jean M. Ingrassia was held on July 20, 2004 (Tr. 1093-1129). In a decision dated January 12, 2005, the ALJ found that good cause existed for Ms. Wilson missing her first hearing and proceeded to the merits of her application (Tr. 18-32). The ALJ issued a decision unfavorable to Ms. Wilson (Tr. 18-32). The Appeals Council denied Ms. Wilson's request for review on June 15, 2005 (Tr. 9-11). This action for judicial review was filed on August 22, 2005 (docket number 4).

## II. FACTUAL BACKGROUND[1]

On July 9, 2001, Ms. Wilson was admitted to Miami Valley Hospital in Dayton, Ohio, complaining of chest pain (Tr. 343 - 369). She was discharged on July 14, 2001 (Tr. 343). Laboratory tests conducted during this hospitalization revealed that Ms. Wilson had a hematocrit levels of 27.1 and 27.2 on July 10, 2001, 28.6 on July 12, 2001, and 29.5 on July 13, 2001 (Tr. 349, 364) and she was discharged with a diagnosis of iron deficiency anemia (Tr. 343). On September 10, 2001, Ms. Wilson's hematocrit level was 30.1 (Tr. 411). On February 24, 2002, Ms. Wilson was admitted to Miami Valley Hospital, at which time her hematocrit level was 13.4 (Tr. 475). On June 3, 2002, Ms. Wilson's hematocrit level was 32.1 (Tr. 482). On August 26, 2002, Ms. Wilson's hematocrit level was 33.1 (Tr. 620). Ms. Wilson was again hospitalized from September 8 to September 12, 2002 (Tr. 488-509). At admission she was given a blood transfusion (Tr. 495). Ms. Wilson's hematocrit level was 27.3 on September 8, 2002, 26.7 on

---

[1] Ms. Wilson's primary argument is that the ALJ's finding that she did not meet the criteria for chronic anemia, a listed impairment, is not supported by substantial evidence in the record. The court agrees. Thus, the factual background will recite only the medical evidence relating to Ms. Wilson's chronic anemia. The court further notes that the Commissioner has not alleged, and the court's own review of the record does not indicate, that Ms. Wilson's drug abuse was a contributing factor material to her chronic anemia.

2

September 9, 2002, 28.8 on September 10, 2002, and 31.5 on September 11, 2002 (Tr. 505). On October 10, 2002, Ms. Wilson's hematocrit level was 32.7 (Tr. 531, 544). It was 35.8 on October 14, 2002 (Tr. 557). On October 21, 2002, Ms. Wilson's hematocrit level was 38.5 (Tr. 578). Ms. Wilson was admitted to Covenant Medical Center in Waterloo, Iowa on April 4, 2003 and discharged on April 11, 2003 (Tr. 627 - 650). Her hematocrit level during her stay ranged from 30.2 to 30.8 (Tr. 628, 637, 643). On May 7, 2002, Ms. Wilson's hematocrit level was 33 (Tr. 681).

Ms. Wilson was hospitalized from May 20 to May 25, 2003 (Tr. 706-746). Her hematocrit level was 27.2 on May 20, 2003, at which time she was assessed as suffering from "anemia of chronic disease" (Tr. 708, 713). Ms. Wilson had a blood transfusion on May 22, 2003 (Tr. 725, 739). On May 23, 2003, Ms. Wilson's hematocrit level was 28.1 (Tr. 734). Ms. Wilson's hematocrit level was 27.0 as of 5:00 a.m. on June 2, 2003 and 29.3 as of 2:55 p.m. (Tr. 673, 676). On June 11, 2003, Ms. Wilson's hematocrit level was 31 (Tr. 654, 659). On June 14, 2003, it was 26 (Tr. 781). It was 18.7 on August 13, 2003 (Tr. 796).

Ms. Wilson had a blood transfusion on November 11, 2003 (Tr. 813). At this time, her hematocrit level was 22.2 (Tr. 818). Ms. Wilson received five blood transfusions during her January 18 to January 20, 2004 hospitalization (Tr. 880, 884-86). On January 18, 2004, Ms. Wilson's hematocrit level was 23.9 at 6:10 a.m., and was 25.8 as of 5:30 a.m. (Tr. 876). It was 27.1 at 5:30 a.m. on January 19, 2004 and 21.0 as of 6:20 p.m. (Tr. 876, 955). On January 20, 2004, her hematocrit level was 33.0 at 5:20 a.m., 33.7 as of 10:10 a.m., and 36.1 as of 5:05 p.m. (Tr. 876, 947). On January 21, 2004, Ms. Wilson's hematocrit level was 35.7 at 12:45 a.m., 36.4 at 5:00 a.m., and 37.5 at 8:50 a.m. (Tr. 876).

Ms. Wilson was hospitalized again from March 14, 2004 to March 17, 2004, during which time she received a blood transfusion (Tr. 981, 983). Upon admission, her hematocrit level was 24 (Tr. 983). During her hospitalization, her hematocrit levels were

3

30.0, 27.8, 27.2, 26.2, and 32.4 (Tr. 1007). With respect to her anemia, Dr. Mohammed Masri, M.D., commented on March 18, 2004:

> The underlying etiology for her anemia is multifactorial. Clearly, she has some blood loss by history from her rectal fissure and heavy vaginal bleeding, but I do not think this will explain her anemia completely. Her rectal bleeding is only minimal and intermittent. I suspect her anemia is primarily from her HIV and retro viral therapy. Most HIV medications cause anemia.

(Tr. 986). On March 24, 2004, Ms. Wilson's hematocrit level was 37 and 39 (Tr. 1018, 1019, 1029).

Ms. Wilson underwent another blood transfusion On April 5, 2004 (Tr. 1036, 1046). At this time her hematocrit level was 25.5 (Tr. 1041, 1051). By 4:56 p.m. on April 5, 2004, Ms. Wilson's hematocrit level was 30.9 (Tr. 1051). On May 10, 2004, Ms. Wilson's hematocrit level was 24 (Tr. 1068). On June 23, 2004, her hematocrit level was 32 (Tr. 1075).

## II.  CONCLUSIONS OF LAW

### A.  Scope of Review

In order for the court to affirm the ALJ's findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. See Lochner v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). Substantial evidence is more than a mere scintilla. It means relevant evidence a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1997); Cruse, 867 F.2d at 1184; Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir. 1986). The court must take into account evidence that fairly detracts from the ALJ's findings. Cruse, 867 F.2d at 1184; Hall v. Bowen, 830 F.2d 906, 911 (8th Cir. 1987). Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence." Cruse, 867 F.2d at 1184 (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. Gunnels v. Bowen, 867 F.2d 1121, 1124 (8th Cir. 1989); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).

### B. ALJ's Disability Determination

Determining whether a claimant is disabled involves a five-step evaluation. See 20 C.F.R. § 404.1520(a)–(f); Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The five steps are:

(1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.

(2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.

(3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.

(4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.

(5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

Trenary v. Bowen, 898 F.2d 1361, 1364 n.3 (8th Cir. 1990) (citing Yuckert, 482 U.S. at 140–42); 20 C.F.R. § 404.1520(a)–(f).

"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995) (citing Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. Id.

Under the first step of the analysis, the ALJ found that Ms. Wilson had not engaged in substantial gainful activity since January 4, 2001 (Tr. 31). At the second and third steps, the ALJ determined that Ms. Wilson the following severe impairments: hypertension, hypertrophic obstructive cardiomyopathy, a history of cocaine-induced myocardial infarction in January 2004, internal hemorrhoids, diverticulitis, colon polyps, a haital hernia, gastritis, iron deficiency anemia, HIV, obesity, depression, cocaine dependence and abuse, alcohol dependence and abuse, and marijuana dependence and abuse (Tr. 31). Excluding the effects of Ms. Wilson's polysubstance abuse, the ALJ determined that she does not have an impairment or combination of impairments listed in nor medically equal to one of the listed impairments (Tr. 31). At the fourth step, the ALJ determined that if Ms. Wilson would abstain from polysubstance abuse and comply with her prescribed medical treatment, she would retain the residual function to perform her past relevant work as a production worker, telephone solicitor, and cleaner (Tr. 31). Therefore, the ALJ determined that Ms. Wilson was not disabled (Tr. 31).

## C. Listed Impairment

As set forth in 20 C.F.R. Ch. III Pt. 404, Subpt. P, App. 1, a claimant meets the listing for chronic anemia (7.02) if her hematocrit level persists at 30 percent or less due to any cause, coupled with either the requirement of one or more blood transfusions on an average of at least once every two months, or an evaluation of resulting impairment under criteria for the affected body system. Chronicity is indicated by "persistence of the

6

condition for at least [three] months" and the "laboratory findings cites must reflect the values reported on more than one examination over that [three] month period." Id. at 7.00.

Ms. Wilson argues that the ALJ's finding that her impairments do not meet a listing is not supported by substantial evidence in the record. Ms. Wilson contends that from May 2003 to the end of the record, she had consistent hematocrit levels under 30% and had six blood transfusions during that time. Ms. Wilson claims that the ALJ improperly dismissed the significance of this impairment by erroneously stating "there is nothing to indicate that her anemia cannot be controlled with medical treatment." According to Ms. Wilson, nothing in her medical records indicates any recommended treatment for her anemia with which she did not comply, or that her substance abuse exacerbated her bleeding or anemia.

The Commissioner argues the record demonstrates that Ms. Wilson's hematocrit was not persistently below 30% for much of the relevant time period, noting that prior to her hospitalization in May 2003, Ms. Wilson's hematocrit had been at or below 30% on only two occasions, i.e., July 2001 and September 2001. From May 2003 to May 2004, the Commissioner further notes that while Ms. Wilson's hematocrit level was often at or below 30% during hospitalization, her hematocrit level had increased to above 30% by discharge. Also during this time period, Ms. Wilson had five blood transfusions, which does not average a transfusion "at least once every two months," as required by the regulations. Further, these transfusions occurred prior to Ms. Wilson's hemorrhoidal banding surgery, after which her bleeding and anemia issues resolved. Finally, the Commissioner argues that Ms. Wilson failed on two occasions during this period to follow up on recommendations to seek gastroenterology consultations and treatment for her gastrointestinal bleeding and anemia.

In reply, Ms. Wilson takes issue with the Commissioner's argument regarding her medical compliance. Ms. Wilson contends that she stopped taking ferrous sulfate for her anemia because it caused constipation and she was suffering from a bleeding rectal fissure.

7

Ms. Wilson further explains that while she did miss an appointment at the UIHC, it was because she was hospitalized in Waterloo.

A thorough review of the medical records indicates that Ms. Wilson's hematocrit level was below 30% on 13 documented occasions from May 20, 2003 to May 10, 2004. Further, the court's review of the record reveals that Ms. Wilson had nine blood transfusions during that same time, i.e., one on May 22, 2003, one on November 11, 2003, five during her January 2004 hospitalization, one on March 14, 2004, and one on April 5, 2004. From November 2003 through April 5, 2004, Ms. Wilson averaged at least one blood transfusion every two months. The fact that Ms. Wilson's hematocrit level would go above 30% either after a blood transfusion or by time of discharge has no impact on the fact that she meets the listing for chronic anemia. Further, the ALJ's finding that "there is nothing to indicate that her anemia can not be controlled with medical treatment" is contradicted by Dr. Masri's opinion that Ms. Wilson's anemia is actually caused by her HIV medication and the medical evidence that the iron supplements she was given for her anemia caused constipation, which increased her fissure/hemorrhoid issues. In sum, the ALJ's conclusion that Ms. Wilson did not meet the listed impairment for chronic anemia is not supported by substantial evidence in the record as a whole.

Finally, the court finds that, under these circumstances, reversal for an award of benefits is proper. Gavin v. Heckler, 811 F.2d 1195, 1201-02 (8th Cir. 1987); Beeler v. Brown, 833 F.2d 124, 127 (8th Cir. 1987) (although there was no shift in the burden to the Secretary, reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability."); Stephens v. Secretary of Health, Educ., & Welfare, 603 F.2d 36, 42 (8th Cir. 1979) (reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). If a remand for "further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984).

Upon the foregoing,

IT IS ORDERED that the determination of the ALJ is reversed and this matter is remanded for an award of benefits.

October 20, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT